UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES ZYCH,

                              Plaintiff,                    18-CV-742Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #14.

## BACKGROUND

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on October 13, 2016, alleging disability beginning September 1, 2015, at the age of 30, due to migraines, back issues, depression and anxiety. Dkt. #7, pp.71, 82-83 & 134.

On November 3, 2017, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Jay Steinbrenner, at an administrative

hearing before Administrative Law Judge ("ALJ"), William M. Weir. Dkt. #5, pp.36-78. At the outset of the hearing, plaintiff's counsel advised that records of three or four treatment sessions at Suburban Psychiatric Associates beginning in the Spring of 2017 remained outstanding. Dkt. #5, p.39. The ALJ afforded counsel time to submit these records. Dkt. #5, p.39.

Plaintiff testified that he was an electro-environmental specialist with the Air Force for more than five years before his honorable discharge on March 31, 2011. Dkt. #5, p.46. He has a 100% disability rating due to a combination of impairments, including migraines, back, knees and psychiatric issues. Dkt. #5, p.46. Plaintiff has completed a number of college credits but has not obtained a degree because of his anxiety. Dkt. #5, pp.47 & 61. He resides with his wife and three children, ages 10, 9 and 5. Dkt. #5, p.44. Plaintiff restricts his driving to appointments because being out on the road provokes anxiety. Dkt. #5, p.45. Plaintiff works 3-4 days per week for a total of approximately 20 hours per week as a service technician at Dave & Busters. Dkt. #5, p.47. He prefers to work three 8-hour days rather than 4 six hour days. Dkt. #5, p.48. Plaintiff testified that he could probably work full-time at Dave & Busters if he didn't have to duck into machines the entire time. Dkt. #5, p.50. Mentally, he was unsure if he would be able to work there full-time because it can get very stressful dealing with people there. Dkt. #5, p.50.

Plaintiff testified that he frequently suffers from migraines which can last several days and normally occur more than once per month. Dkt. #5, p.51. Plaintiff's

migraines make him sensitive to light and prevent him from focusing. Dkt. #5, p.51. Plaintiff also experiences constant back pain which is exacerbated by crawling around or underneath video games at work. Dkt. #5, p.53. He can generally walk around for a couple of hours, but is limited in his ability to stand in one place for more than 15 minutes or sit for more than 30 minutes at a time. Dkt. #5, p. 54. He can carry two regular sized grocery bags and estimated that he could lift 20 pounds. Dkt. #5, pp.54-55. He does not generally sleep more than three hours per night because of his back pain. Dkt. #5, p.62. Plaintiff fights depression every day and experiences bad anxiety when he is out with his children due to a fear that something bad could happen at any given moment. Dkt. #5, pp.56-57. He does not like to be in social situations because of his anxiety and has to manage his symptoms while working at Dave & Busters. Dkt. #5, p.57. He can go to movies or stores if they are not crowded. Dkt. #5, pp.65-66. He does play board games with friends approximately once per week. Dkt. #5, pp.65-66.

The VE was asked to assume an individual with the residual functional capacity ("RFC"), to perform light work[1] with occasional social contact and occasional crouching, crawling and kneeling, but who could not drive a motor vehicle or use foot controls or pedals as an essential part of the job. Dkt. #5, p.75. The VE testified that

---

[1] Light work involves lifting no more than 20 pounds at a time and occasionally lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b).

such an individual would be able to work as a hydraulic assembler as plaintiff previously performed that skilled job, and could also work as an electronics assembler and electronics tester, each of which were semi-skilled positions. Dkt. #5, pp.73 & 75-76.

The ALJ rendered a decision that plaintiff was not disabled on January 17, 2018. Dkt. #5, pp.16-31. The Appeals Council denied review on May 10, 2018. Dkt. #7, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on July 5 2018. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) although plaintiff worked part-time, he had not engaged in substantial gainful activity since the alleged onset date of September 1, 2015; (2) plaintiff's migraine headaches, degenerative disc disease with lumbago,

anxiety disorder and depressive disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the residual functional capacity to perform light work with the following limitations: no use of foot controls or pedals, no driving required and occasional crouching, crawling, kneeling and social contact; and (5) plaintiff was not capable of performing his past relevant work as a hydraulic assembler but could work as an electronic assembler and electronics tester, both of which constitute light work. Dkt. #5, pp. 59-31.

Failure to Develop the Record

Plaintiff argues that the ALJ failed to develop the record to include evidence of treatment from Suburban Psychiatric Associates even though counsel made the ALJ aware that these treatment records were outstanding and improperly cited to the gap in mental health treatment as evidence that plaintiff's mental health condition was not severe. Dkt. #8-1, pp.25-27.

The Commissioner responds that there was sufficient evidence regarding plaintiff's mental health for the ALJ to determine plaintiff's RFC. Dkt. #11-1, pp.21-22. In any event, the ALJ afforded plaintiff sufficient time to provide the mental health records from Suburban Psychiatric Associates, yet plaintiff failed to do so. Dkt. #11-1, p.22-23.

In light of the essentially non-adversarial nature of a social security proceeding, it is well accepted that an ALJ has an affirmative duty to develop the

administrative record. *See, e.g., Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). Due to the difficulty in determining whether individuals suffering from mental illness will be able to adapt to the demands or stress of the workplace, the duty to develop the record is particularly important where mental illness is present. *Marcano v. Berryhill*, 17 Civ. 4442, 2018 WL 5619749, at * 11 (S.D.N.Y. July 13, 2018). This duty exists even when the claimant is represented by counsel. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). However, the ALJ is required to seek out additional evidence only where there are obvious gaps in the record. *Eusepi v. Colvin,* 595 Fed. App'x 7, 9 (2d Cir. 2014). The ALJ is not obligated to seek additional medical records where the record evidence is sufficient for the ALJ to make a disability determination. *Johnson v. Comm'r of Soc. Sec.,* 16-CV-831, 2018 WL 1428251, at *5 (W.D.N.Y. March 22, 2018).

On August 8, 2015, one month prior to his alleged onset of disability, a Clinical Psychologist at the Veteran's Administration ("VA"), reviewed plaintiff's medical record and conducted an examination of plaintiff in response to his request for an increase in service-connection for mental disorder. Dkt. #5, pp.324-331. Plaintiff was working full-time and reported that his work performance was "good enough" even though he felt his employer was "horrible" to him. Dkt. #5, p.328. He was observed to be disheveled and poorly groomed with intermittent eye contact, slowed thought process and aprosodic speech with a flat affect. Dkt. #5, p.329. He was diagnosed with major depressive disorder and generalized anxiety disorder which the psychologist opined would cause moderate social and occupational impairment. Dkt. #5, p.329.

At the time of this examination, plaintiff was receiving treatment at Horizon, where he was diagnosed with major depression and generalized anxiety. Dkt. #5, p.233. The treatment provider determined that given plaintiff's failure to take his medication consistently, he should stop his medication to obtain a baseline of his mental health symptoms and functional capacity, but such a baseline was never established because of his chronic use of marijuana and lack of consistent treatment. Dkt. #5, p.241. Plaintiff discontinued further treatment on October 26, 2015 after attending eight appointments. Dkt. #5, pp.240-241.

Plaintiff presented to his primary care provider at the VA on February 11, 2016, reporting that since he stopped taking his mental health medication, he was more awake, interactive and overall feeling better. Dkt. #5, p.315. The primary care provider observed that plaintiff "looks great!" Dkt. #5, p.315. Plaintiff denied being depressed or anxious and reported that he really liked his job and co-workers at Dave & Busters and no longer experienced the migraines and mood swings that he had as a machinist. Dkt. #5, pp.315 & 316. Two weeks later, a staff psychiatrist at the VA Behavioral Health Clinic assessed plaintiff with chronic anxiety with panic attacks and depression and referred him to individual therapy. Dkt. #5, p.311.

On March 15, 2016, plaintiff was observed to be mildly depressed with an anxious mood. Dkt. #5, p.307. On March 30, 2016, plaintiff reported that he had ceased his mental health medications three months prior as they made him feel tired all the time and that he was missing less work as his new job at Dave & Busters was less

stressful. Dkt. #5, p.303.  A treatment note from VA Behavioral Health Clinic dated April 5, 2016 noted that plaintiff presented with a mildly depressed and anxious mood and reported difficulty dealing with family stressors. Dkt. #5, pp.301-302. Plaintiff was counseled on relaxation exercise and strategies for dealing with his children and encouraged to obtain a consult for a sleep study. Dkt. #5, p.302. Plaintiff cancelled his next appointment and failed to reschedule. Dkt. #5, p.302.

A consulting psychiatric examination conducted on January 3, 2017 revealed that plaintiff was well groomed, cooperative, maintained appropriate eye contact and expressed a full range and appropriate affect. Dkt. #5, pp.747-749. Plaintiff was diagnosed with an adjustment disorder with mixed anxious and depressed mood and determined to possess the capacity to

> follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits. Mild impairment is demonstrated in performing complex tasks independently.

Dkt. #5, p.749. It was recommended that plaintiff continue his current employment and consider individual psychological therapy to assist with positive compensatory skills. Dkt. #5, p.750.

In light of the relative consistency of plaintiff's mental health symptoms, diagnoses and treatment recommendations during the relevant time frame, the absence of three or four additional mental health treatment records from the Spring of 2017 does

not constitute a gap in the administrative record which the ALJ was required to fill before he could render a determination as to plaintiff's mental RFC.

Substantial Evidence for RFC

Plaintiff argues that the ALJ erred in his assessment of plaintiff's credibility with respect to his mental condition and emphasizes that plaintiff's disability was rated 100% by the VA. Dkt. #8-1, p.27. Plaintiff also argues that the ALJ failed to properly consider that plaintiff's improvement was due to his reduction in work hours and failed to properly assess plaintiff's capacity for stress. Dkt. #8-1, pp.21-24.

The Commissioner responds that the ALJ is not bound by the VA disability rating, as the burden of proof for Social Security is more stringent and that the ALJ appropriately evaluated the objective medical evidence and plaintiff's subjective complaints in determining plaintiff's RFC. Dkt. #11-1, pp.10-11.
. Dkt. #11-1, p.19.

"Disability decisions by other governmental agencies are not binding on the ALJ, but are entitled to some weight and should be considered." *Rivera v. Colvin*, 592 Fed App'x 32, 33 (2d Cir. 2015) (internal quotation omitted). The Department of Veterans Affairs has determined that plaintiff has one or more service-connected disabilities with a combined evaluation of 100%. Dkt. #5, p.177. A progress note from the VA Behavioral Health Center dated February 25, 2016 states that plaintiff "was service connected 100%/70% for anxiety." Dkt. #5, p.310. The ALJ recognized plaintiff's

service-connected disability evaluation, but determined that a finding of 100 percent disability was generally inconsistent with the plaintiff's conservative treatment history, generally normal physical examinations, generally only mild mental deficits, and the plaintiff's ability to work at near substantial gainful activity levels. Dkt. #5, p.29. Thus, the ALJ considered the VA's disability rating and sufficiently explained the basis for affording little weight to that assessment. The ALJ further determined that plaintiff's anxiety disorder and depressive disorder warranted a limitation to occasional social interaction but otherwise did not interfere with his ability to engage in substantial gainful activity. Dkt. #5, p.29. This determination is supported by the opinion of the consulting psychiatric examiner that plaintiff could appropriately deal with stress within normal limits as well as plaintiff's sustained part-time employment in a public work place, regular social engagement with friends, engagement with his family and management of his mental health symptoms by accessing supportive therapy as needed.

In addition to the mental health treatment set forth above, the medical record reveals treatment for migraine headaches and back issues. Plaintiff established care with United Memorial Medical Center on January 4, 2016. Dkt. #5, p.794. He was counseled to use his TENS Unit and to strengthen his core and improve his posture and counseled on use of Imitrex for migraines. Dkt. #5, p.794. Plaintiff presented to his primary care provider at the VA on February 11, 2016, reporting that he no longer experienced the migraines and mood swings that he had as a machinist. Dkt. #5, p.315. Plaintiff's chronic lower back pain was deemed "not problematic enough for intervention." Dkt. #5, p.318. On March 15, 2016, plaintiff underwent an initial

consultation with the VA Behavioral Health Clinic and reported a long history of sleep disturbance and back pain which he successfully managed through stretching and home exercise. Dkt. #5, p.306. On March 30, 2016, plaintiff presented to the VA Health Care System with complaints of recent migraines occurring on average once every two weeks as well as headaches of lesser severity occurring sometimes three times per week. Dkt. #5, p.303. Plaintiff reported that Imitrex helped if he took it early enough. Dkt. #5, p.303.

Plaintiff underwent a consultative physical examination on January 3, 2017. Dkt. #5, p.751. His gait was normal, he was able to walk on heels and toes without difficulty and squat. Dkt. #5, p.752. He had full flexion, extension, lateral flexion and rotary movement bilaterally of both his cervical and lumbar spine. Dkt. #5, p.753. He had full range of motion of hips, knees and ankles bilaterally. Dkt. #5, p.753. Straight leg raise was negative. Dkt. #5, p. 753. He had full strength in his upper and lower extremities and grip. Dkt. #5, p.753. Plaintiff was assessed to have no physical limitations. Dkt. #5, p.753.

At his annual physical on February 10, 2017, plaintiff complained of head and back pain and was prescribed Motrin. Dkt. #5, pp.796 & 799. On July 10, 2017, plaintiff presented to the emergency room with back pain and resulting incontinence but left before receiving treatment. Dkt. #5, p.803. On July 11, 2017, plaintiff called the VA to report that he hurt his back while cleaning his basement but declined to be seen. Dkt. #5, p.814. He was advised to take Motrin and use heat/ice therapy. Dkt. #5, p. 814. He denied bladder or bowel incontinence. Dkt. #5, p.814.

On August 4, 2017, plaintiff presented to Mercy Hospital following a motor vehicle accident. Dkt. #5, p.821. A CT of his lumbar spine revealed some mild degenerative changes. Dkt. #5 p.829. An MRI of plaintiff's spine on August 28, 2017 revealed a broad central L5-S1 disc herniation impinging on the S1 nerve roots bilaterally as well as a central T7-8 and T8-9 disc herniation and a small right-sided C5-6 disc herniation and bulging of the disc at C4-5. Dkt. #5, pp.864-866. Plaintiff was excused from work from August 15, 2017 through September 8, 2017 and received chiropractic care through October, 2017. Dkt. #5, pp. 840 & 852-861.

These medical records provide substantial evidence for the ALJ's determination that with continued treatment, medication and reduced stress, plaintiff's migraine headaches had become episodic and intermittent with only infrequent exacerbations that would not interfere with work activities on a sustained, ongoing basis. Dkt. #5, p.26. With respect to his back issues, the ALJ determined that plaintiff's ability to manage his condition with NSAIDs, heat, ice and stretching weighed against a finding of disability. Dkt. #5, p.26. This determination is further supported by the opinion of the consulting physical examiner that plaintiff had no physical limitations, as well as plaintiff's activities of daily living, including his part-time work at Dave & Busters and his post-motor vehicle accident hearing testimony that he could lift 20 pounds and walk for 1-2 hours at a time, sit for 30 minutes and stand for 15 minutes, which comfortably fits within the ALJ's restriction to light work with additional limitations.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #11), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
                **January 3, 2020**

                                            _s/ H. Kenneth Schroeder, Jr._
                                            **H. KENNETH SCHROEDER, JR.**
                                            **United States Magistrate Judge**